IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| TIMOTHY BRUNNER, | ) | |
| | ) | |
| Plaintiff | ) | 1:23-CV-00017-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| LONNIE OLIVER, SUPERINTENDENT, | ) | |
| SCI-ALBION; EARL JONES, D.S. | ) | MEMORANDUM OPINION ON |
| FACILITY MANAGEMENT, SCI ALBION; | ) | DEFENDANTS' MOTION TO DISMISS |
| KURT SUESSER, PROGRAM MANAGER, | ) | |
| SCI-ALBION; HOWARD SISSEM, | ) | |
| SECURITY CAPTAIN, SCI-ALBION; | ) | IN RE: ECF NO. 39 |
| HEATHER TAYLOR, BUSINESS | ) | |
| MANAGER - SCI ALBION; AND | ) | |
| MICHELLE ROSCINSKI, CEVC - SCI | ) | |
| ALBION, | ) | |
| | ) | |
| Defendants | ) | |

I.    Introduction

Pending before the Court is the Defendants' motion to dismiss Plaintiff's Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF No. 39. For the reasons explained

herein, the motion will be granted in part and denied in part. The motion will be granted as to all

claims for compensatory and punitive damages against all Defendants but denied as to Plaintiff's

claim for injunctive relief.[1]

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c).

II.     Background

    A.     Factual and Procedural Background

Plaintiff Timothy Brunner ("Brunner") is an inmate currently incarcerated at the State Correctional Institution at Albion.  He initiated this lawsuit by filing a motion to proceed in forma pauperis, which the Court granted.  *See* ECF Nos. 1, 5.  Brunner's original complaint was docketed on March 1, 2023.  Brunner then filed an Amended Complaint, which included several exhibits.  *See* ECF No. 17.  The Amended Complaint remains the operative pleading before the Court.

Brunner's Amended Complaint includes an 18-page narrative describing events that ultimately led to the loss of his prison job.  Named as defendants are the following SCI-Albion personnel: Howard Sissem, Security Captain; Lonnie Oliver, Superintendent; Earl Jones, "D.S." for facility management; Kurt Suesser, Program Manager; Heather Taylor, Business Manager; and Michelle Roscinski, "CEVC."  *Id.*, pp. 3-5.  The following facts are gleaned from Brunner's narrative and taken as true for purposes of the Defendants' motion to dismiss.  *See, e.g., Mahone v. Johnson Controls, Inc.*, 2024 WL 1861530, at *1 (M.D. Pa. Apr. 29, 2024).

While on his way to work on October 15, 2020, Brunner was approached by Security Captain Sissem, who asked Brunner whether he "had anything on [him]."  After producing items he had purchased from the commissary for his dinner that day, Sissem then asked Brunner what he had been "muling" across the compound.[2]  Brunner stated "nothing."  Sissem then instructed Brunner to empty his pockets.  Brunner complied, producing for Sissem's inspection a pair of latex gloves, paper towels, pages of crossword puzzles, a pen, his ID, and a work pass.  A search of Brunner's person was conducted by another corrections officer but nothing more was found.

---

[2] The Court understands the term "muling" in this context to refer to smuggling contraband into or within the prison, possibly for other persons.

Sissem asked for more information regarding the crossword puzzles and Brunner responded that "they are crossword puzzles." Sissem inquired again about Brunner's alleged muling activities. Brunner denied muling anything. Sissem then ordered the other corrections officer to issue Brunner a misconduct for having contraband.

After a misconduct hearing conducted days later, a prison intelligence officer met with Brunner and showed him photographs of the crossword puzzle pages. Brunner was told they had tested positive for "K-2."[3] Brunner explained that those puzzles were sent to him from his family and that he was not a drug user. Brunner was later permitted to return to his cell. The Amended Complaint is not clear whether Brunner was given a misconduct, but Brunner contends that at a misconduct hearing he was told that his "job would not be taken" but then later that day he was removed from his job for "conducting jail house business at work." The misconduct charge was ultimately dismissed, and Brunner was reinstated to his prison job. Brunner alleges that Sissem thereafter subjected him to harassment, most of which "was petty, being in the form of comments from Capt. Sissem in passing to the effect of, 'How do you still have this job?'"

On January 31, 2022, Brunner was searched again on his way to his job. Upon returning to his cell, a corrections officer told Brunner that he "was being watched" for "peddling e-cigarettes in the medication line." Brunner asked to speak to another corrections officer who was aware that he was trying to obtain a new job away from Sissem's influence. Afterward, Brunner was subjected to "a ridiculous amount" of searches, often "5 times in 4 hours," which he claims was double the number conducted upon any other medical worker. Then, on February 25, 2022, Sissem again subjected Brunner to a "thorough" search. Upon finding nothing, Sissem accused Brunner of having K-2 on paper towels he had been given by staff to clean the

---

[3] "K-2" or "K2" is a synthetic drug designed to mimic the effects of marijuana. *United States v. Smith*, 2024 WL 1715105, at *1 (3d Cir. Apr. 22, 2024); *McCallion v. Marra*, 2024 WL 2078665, at *1 (N.D.N.Y. May 9, 2024).

medication line.  Brunner denied using or possessing anything tainted by K-2.  Sissem then told

Brunner that he was going to have him "removed from the medication line."

Although the timing is not clear from the Amended Complaint, sometime after March 12,

2022, Brunner was told by Defendant Roscinski that his position as medication line janitor was

being eliminated because it was unnecessary.  He was told that this had "nothing to do with me"

and that the other medication line janitor has also had his position eliminated.  Roscinski told

Brunner that Sissem had emailed her asking her to "end the position" but he did not say why.

She also told Brunner that she would look for a new position for him once "she sorted it out with

Capt. Sissem."

Brunner spoke to Defendant Jones concerning the loss of his prison job.  Jones told

Brunner to "write to Lt. Floyd to request an investigation to clear [him] of any accusations."

After receiving what Brunner felt were unsatisfactory responses to in his inquiries, he began the

grievance process.  Defendant Suesser provided the initial response to Brunner's grievance and

concluded that Sissem was acting to "maintain the integrity, along with the safety and security,

of SCI-Albion"

Brunner was also permitted to supplement his Amended Complaint to allege that he was

also denied a job as a tutor.  *See* ECF No. 47.  Brunner alleges that he was tested, interviewed,

and selected for a tutoring position only to be denied by Roscinski.  Brunner claims that upon

receipt of this lawsuit, Roscinski denied him the tutoring job.  *Id.*

B.    Claims asserted in the Amended Complaint

Brunner's Amended Complaint fails to provide a clear or concise statement of the

specific claims he is asserting and what each of the six named Defendants did or failed to do that

allegedly violated his rights.  Construing Brunner's Amended Complaint liberally, Brunner

appears to assert claims pursuant to 42 U.S.C. § 1983 for violations of his Fourteenth Amendment right to due process and his First Amendment right to be free from retaliation, as well as a general claim of "harassment." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a pro se complaint is to be "liberally construed"). Except as to Sissem, the Amended Complaint does not clearly identify which allegations and claims are being asserted against which Defendants. As damages, Brunner claims injury to his reputation arising from Sissem's labeling him a "security risk," thereby sullying his "16 years" of "exemplary behavior" at SCI-Albion. Sissem's actions, Brunner claims, also prevents him from participating in certain SCI-Albion programs, such as the "puppy program."

Defendants have moved to dismiss all claims of Brunner's Amended Complaint. In support, they assert three grounds for dismissal: (1) Brunner has failed to exhaust his administrative remedies as to his claims for monetary damages; (2) he has failed to allege the personal involvement of several Defendants; and (3) he has failed to allege facts sufficient to support the necessary elements of any claim. *See, e.g.*, ECF No. 40, *generally*. Brunner as filed a Response in Opposition to the Defendants' motion (ECF No. 44). The motion is now ripe for disposition.

III.     Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of

public record, and documents that form the basis of a claim" when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as

true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Brunner is proceeding pro se, his Amended Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read his *pro se* pleading to state a valid claim upon which relief could be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969). Despite this leniency, however, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

IV.   Discussion and Analysis

    A.   Brunner's claims for monetary relief are unexhausted and will be dismissed.

The Pennsylvania DOC's three-step grievance process is set forth in policy number DC-ADM 804, which is available at https://www.cor.pa.gov/About% 20Us/Documents/DOC% 20Policies/804% 20Inmate% 20Grievances.pdf (last viewed May 22, 2024). *See generally Moore v. Lamas*, 2023 WL 371397, at *2 (3d Cir. Jan. 24, 2023) ("DC-ADM 804 provides a general, though rigorous, mechanism for inmate grievances."). The United States Court of Appeals for the Third Circuit has summarized the policy's relevant procedures as follows:

> ADM 804 creates the three-step Inmate Grievance System. First, an inmate must submit a grievance to the Facility Grievance Coordinator. The grievance must include the relevant facts, individuals involved, claims alleged, and relief sought. A different official—the Grievance Officer—reviews the grievance and submits an initial response. The inmate may appeal the initial response to the Facility Manager, who reviews it and issues a decision. The inmate may file a final appeal to the Secretary of Corrections' Office of Inmate Grievances and Appeals .... ADM 804 requires an inmate to specify in his grievance any alleged violation of department regulations or other law as well as specify the compensation or legal relief the inmate desires.

*Prater v. Dep't of Corr.*, 76 F.4th 184, 203-04 (3d Cir. 2023). DC-ADM 804 "is the exclusive means of exhaustion," as to most matters of prison life. Id. at 204.

    An inmate's failure to "follow the full administrative review process under ADM 804" results in a failure to exhaust under the PLRA. *Id.* at 204. DC-ADM 804 specifically instructs that an inmate who ultimately seeks to recover "compensation or other legal relief normally available from a court ... must request the specific relief sought in his/her initial grievance." DC-ADM 804 § 1(A)(11)(d). This requirement is "mandatory." *Wright v. Sauers*, 729 Fed. Appx. 225, 227 (3d Cir. 2018). The DOC's approved grievance form itself further instructs the inmate to "[s]tate all relief that you are seeking." DC-ADM 804, Attachment A. *See also Walker v.*

*Little*, 2023 WL 2570562, at *2 (3d Cir. Mar. 20, 2023) (noting that "the instructions on the grievance form advise the inmate to '[s]tate all relief that you are seeking'"). "All relief" includes monetary damages, which must be requested in the inmate's initial grievance. *See Wright v. Sauers*, 729 Fed. Appx. at 227 ("the Prison's policy required [the plaintiff] to specifically request monetary relief in his initial grievance."). *See also Shorter v. Sorber*, 2024 WL 1442163, at *3 (E.D. Pa. Apr. 3, 2024) (citing *Wright*). A request for monetary relief in a grievance need not "request a specific dollar amount," but it must include a request for monetary compensation if the inmate wishes to preserve such a claim for possible future litigation. *Sides v. Pennsylvania Dept of Corr.*, 2020 WL 1493549, at *7 (W.D. Pa. Mar. 27, 2020). "An inmate procedurally defaults any claim for monetary relief if he d[oes] not seek such relief in his grievance." *Newsome v. Teagarden*, 2021 WL 1176102, at *8 (W.D. Pa, Mar. 29, 2021) (only relief requested was preservation of video evidence, not money). Such a default precludes the recovery of monetary relief in any subsequent litigation. *See Camacho v. Beers*, 2018 WL 6618410, at *3 (W.D. Pa. Dec. 18, 2018) (holding that, because "Plaintiff failed to request the specific relief of monetary compensation in the grievances he filed as to the subjects of this lawsuit ... he did not exhaust all administrative remedies with regard to such claims ... [and] may not pursue an action in federal court based on the claims raised in his procedurally defective grievances."); *Taylor v. Chesmer*, 2020 WL 5366055, at *5, *8-9 (W.D. Pa. 2020) (granting summary judgment against prisoner's claim for money damages where plaintiff's grievance requested no relief); *Sanders v. Beard*, 2013 WL 1703582, at *6 (M.D. Pa. Apr 19, 2013) (same); *Williams v. Overmyer*, 2019 WL 8989847, at *5 (W.D. Pa. Nov. 15, 2019) (slip copy) (same); *Wilson v. Miller*, 2020 WL 1289875, at *3-4 (W.D. Pa. Feb. 6, 2020) (holding that money damages are unavailable where inmate failed to request monetary relief in initial

grievance or appeal), *report and recommendation adopted by*, 2020 WL 1286300 (W.D. Pa. Mar. 18, 2020); *McClain v. Pa. Dep't Corr.*, 2024 WL 1810552, at *5 (M.D. Pa. Mar. 27, 2024) (holding that "dismissal of a claim on exhaustion grounds is proper where the inmate failed to request monetary relief in his official grievance").

A plaintiff need not allege in his complaint that he has exhausted his administrative remedies. *Jones v. Bock,* 549 U.S. 199, 216 (2007).  Rather, a plaintiff's failure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove; as such, it is usually reserved for the summary judgment stage of litigation. *Aldridge v. Good*, 2006 WL 2819942, at *2 (W.D. Pa. Sept. 28, 2006) (citing *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). In appropriate cases, however, a defendant may raise failure to exhaust in a motion to dismiss. *Ray*, 285 F.3d at 295 n. 8.  Where, for example, a plaintiff's failure to exhaust is clear on the face of the complaint, the Court may dismiss the action.  *See, e.g., Pearson v. Danfelt*, 2024 WL 2159524, at *3 (M.D. Pa. May 10, 2024) (citing *Booth v. Churmer*, 532 U.S. 731 (2001)).  Using the pre-approved form complaint form, Brunner stated that he filed a grievance that encompasses the claims in this case. *See* ECF No. 17, p. 26.  He identified the relevant grievance as No. 994227 and attached a copy as "Exhibit 10." *Id.*; *see also* ECF No. 17-11, pp. 1-4.  Therein, Brunner grieved the following actions: "I was removed from my job as the Med-Line Janitor around 4-1-22 in retaliation for a request detailing harassment by Cpt. Sissem dated 2-12-22 though Ms. Roscinski, Ms. Eddy, Lt. Floyd, Dep. Jones and others had told me that the collapsing of that position had nothing to do with me or my performance." *Id.*, p. 2.  Brunner further stated that "[t]he relief I seek is placement in C.I. since I have been on the waiting list for that job and there is no reason I should be precluded from employment there.  I also ask that I not

be retaliated against further." *Id.*, p. 2.[4]  In ruling on a Rule 12(b)(6) motion to dismiss for

failure to state a claim, "a court must consider only the complaint, exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents if the

complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230

(3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192,

1196 (3d Cir. 1993)).  Here, Brunner attached Grievance No. 994227 to his Amended Complaint

and identified it as the grievance pursuant to which he exhausted his claims as required by the

PLRA.  This makes it appropriate for the Court's consideration on Defendants' motion to

dismiss. *See Pearson*, 2024 WL 2159524, at *3.

Absent from Brunner's grievance is any reference or request for monetary relief.  This

failure to request such relief precludes him from seeking it now.  Accordingly, his request for

monetary relief—including punitive damages—against all Defendants must be dismissed.[5]  *See*

*Davis*, 2024 WL 811696, at *5.  This does not, however, preclude Brunner from seeking the

injunctive relief requested in his Amended Complaint, namely "a position in either the Infirmary

or Correctional Industries, as well as a transfer to another institution." *See* ECF No. 17, ¶¶ 4-5.

B.   The claims against Defendants Oliver, Jones, Suesser, and Taylor will be
     dismissed because Brunner does not allege facts to support that they were
     personally involved in any actionable conduct.

---

[4] Due to a scanning error, the second page of Brunner's grievance appears blank on the Court's docket.  The
Defendants have provided the missing page as an exhibit to their motion to dismiss. *See* ECF No. 40-1, p.1.  Brunner
does not challenge the authenticity of this page.

[5] Similarly, Brunner is barred from seeking monetary damages against the Defendants in their official capacities.
The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See*
*Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341
F.3d 234, 238 (3d Cir. 2003).  Suits against state officials acting in their official capacities are really suits against the
employing government agency and, as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238;
*see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  As
the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa.
Cons. Stat. § 8521-22, it and its departments, as well as its officials sued in their official capacities, are immune
from suits for money damages filed in federal court. *See, e.g., Johnson v. Clark*, 2024 WL 2331715, at *6 (E.D. Pa.
May 22, 2024).

Individual liability may be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of respondeat superior." *Id.* In other words, defendants in § 1983 civil rights actions "must have personal involvement in the alleged wrongs ... shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. Acquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity in that a complaint must identify the responsible person or persons, the relevant conduct of each, including, when possible, the time and place of their actions or omissions. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

Here, Brunner has not alleged any facts to support that Oliver, Jones, Suesser, or Taylor was involved in the conduct upon which he bases his claims. Any involvement of these Defendants was solely through the grievance or misconduct process, or as an individual to whom Brunner later expressed verbally or through an Inmate's Request to Staff his dissatisfaction about the loss of his prison job and alleged retaliation by others. For example, Brunner alleges that he was subjected to an inordinate amount of "pat searches," about which he sent "detailed requests" to Suesser, Jones, and Oliver. *See* ECF No. 17, p. 10. He also pleads that he spoke to Jones about the treatment he was receiving from Sissem and that Jones "recommend I write to Lt.

Floyd to request an investigation." *Id.*, pp. 12-13. These allegations do not support Jones'

participation in Sissem's conduct. As to Suesser, the Amended Complaint states only that

Brunner sent requests to him containing a "detailed" recitation of the "ridiculous amount of pat

searches" to which he had been subjected.[6] *Id.*, p. 10. And aside from being named as a

Defendant, Taylor is not mentioned in the Amended Complaint.

The Amended Complaint alleges nothing more than after-the-fact responses to Brunners'

requests for information and/or assistance concerning the loss of his job. Allegations that

Brunner complained to Oliver, Jones, Suesser, and Taylor do not support their personal

involvement in the civil rights violations allegedly committed by others. *See, e.g., Storm v.

McGinley*, 2021 WL 3869943, at *4 (M.D. Pa. Aug. 27, 2021 ("[Plaintiff] sues these individuals

based on their roles on the PRC and their responses to Inmate Requests to Staff slips. The

minimal references to these Defendants in the Amended Complaint are unconnected to the

underlying civil rights violation. Their alleged improper after-the-fact responses ... concerning

the matter do not constitute their personal involvement.").

Although not expressly alleged, given that the Amended Complaint identifies Oliver as

the Superintendent at SCI-Albion, Brunner may be attempting to hold Oliver liable based on his

supervisory role. Such a claim also fails. To the extent Brunner seeks to assert claims against

Oliver under § 1983 based on the conduct of another SCI-Albion employee, he cannot do so

based on respondeat superior. *See Rode*, 845 F.2d at 1207; *see also Robinson v. Delbalso*, 2022

WL 17248100 (3d Cir. Nov. 8, 2022). Instead, there are "two general ways in which a

supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."

*Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by*

---

[6] The Amended Complaint does not indicate whether this communication with Suesser (and Oliver) was through an
Inmate's Request to Staff form or a grievance.

*Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  To state a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must: "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).  "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury."  *Id.*

"Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020) (citation omitted).

Brunner's allegations against Oliver are inadequate to support supervisory liability.  He has not alleged that Oliver personally participated in removing him from his prisoner job or retaliating against him through frequent "pat searchers."  Brunner also has not alleged that Oliver

directed others to engage in conduct that violated his rights.  Additionally, Brunner has not alleged that Oliver either maintained or failed to employ a specific policy or custom knowing that it would likely result in a violation of his rights.  Thus, Brunner has not alleged a basis for imposing supervisory liability against Oliver.  *See Johnson v. Clark*, 2024 WL 2331715, at *7–8 (E.D. Pa. May 22, 2024).

To state a Section 1983 claim, Brunner must specify each Defendant's personal involvement in the alleged constitutional misconduct.  *See, e.g., Holton v. Anyanwu*, 2023 WL 4564925, at *2 (M.D. Pa. July 17, 2023) (dismissing claims for lack of personal involvement). He has failed to do so here.  Accordingly, the claims against Oliver, Suesser, Jones, and Taylor will be dismissed.

    C.    The retaliation claim against Defendant Roscinski will be dismissed.

The Court construes Brunner's allegations against Roscinski as a First Amendment retaliation claim.  Brunner states that Roscinski informed him that his Medication Line Janitor position "had been collapsed as not being necessary" and that this development had "nothing to do with me." ECF No. 17, p. 11.  Brunner alleges that Sissem told her to "end the position but did not tell her why." *Id.*, p. 12.  By way of amendment, Brunner's Amended Complaint also argues that Roscinski retaliated against him by denying him a position as a tutor because he instituted this lawsuit.  *See* ECF No. 47.  These allegations fail to state a First Amendment retaliation claim.

To state a retaliation claim, Brunner must allege facts that plausibly support inferences that (1) he engaged in protected activity; (2) officials took an adverse action against the plaintiff; and (3) "a causal link" exists "between the exercise of his constitutional rights and the adverse action taken against him." *Graziano v. Pennsylvania Dep't of Corr.*, 2023 WL 6389756, at *22

(W.D. Pa. Sept. 30, 2023) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) and citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). *See also Golden v. Perrin*, 2022 WL 2791186, at *4–5 (W.D. Pa. July 15, 2022). "[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech." *Anderson v. Davilla*, 125 F.3d 148, 161 (3d Cir. 1997).

When analyzing whether an inmate engaged in constitutionally protected activity, courts should be mindful that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Graziano*, 2023 WL 6389756, at *22 (quoting *Jones v. North Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 125 (1977) (*in turn quoting Price v. Johnston*, 334 U.S. 266, 285 (1948)). Still, "prison inmates retain those constitutional rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system." *White v. Napoleon*, 897 F.2d 103, 112 (3d Cir. 1990) (citing *Turner v. Safley*, 482 U.S. 78 (1987)); *Pell v. Procunier*, 477 U.S. 817, 822 (1974).

An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). This is an objective inquiry. *See Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id.* at 224 (internal quotation marks and citation omitted). The retaliatory conduct "need not be great

in order to be actionable" but must be "more than *de minimus*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations omitted).

Retaliatory motive may be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Id.* (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). "These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)). With these principles in mind, the Court will examine each of Brunner's retaliation claims.

First, Brunner's allegation that Roscinski "collapsed" and "ended" his janitorial position upon orders from Sissem does not state a retaliation claim because he fails to allege facts to support that Roscinski acted with a retaliatory motive. *See Gibson v. Johnson and Johnson*, 2023 WL 5279134, at *4 (E.D. Pa. Aug. 15, 2023) (holding that a plaintiff asserting a retaliation claim must allege "specific facts that could give rise to an inference of a retaliatory motive") (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). Brunner alleges that Roscinski told him his position was terminated as unnecessary and that this decision had "nothing to do" with Brunner. ECF No. 17, p. 11. He further acknowledges in his Amended Complaint that another inmate who held the same position also lost his job because of the elimination of this position. *Id.* These allegations support only that Roscinski did as she was directed regarding the organization and disposition of prison jobs. They cannot sustain a retaliation claim because they do not support an inference that Roscinski eliminated Brunner's prison job based on her own retaliatory motive.

Second, Brunner contends that despite his being tested, interviewed, and selected for a tutoring position, Roscinski denied him the position because he filed the instant lawsuit. ECF No. 47. The filing of a prison grievance or a lawsuit is protected activity. *See Graziano v. Wetzel*, 2024 WL 580551, at *7 (M.D. Pa. Feb. 13, 2024) (citing *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015)). And although prisoners do not have a protected interest in prison employment, *see James v. Quinlan*, 866 F.2d 627, 629 (3d Cir.), *cert. denied*, 493 U.S. 870 (1989), an inmate cannot be fired from or passed over for a job in retaliation for exercising a constitutional right. *See Shegog v. Grinell*, 2023 WL 4687641, at *3 (W.D. Pa. Mar. 24, 2023), *report and recommendation adopted*, 2023 WL 4686291 (W.D. Pa. July 21, 2023) (citing *Mack v. Warden Loretto FCI*, 839 F.3d 286, 300 n.76 (3d Cir. 2016)).

But Brunner's claim still falls short because his factual allegations fail to support the causation element of his claim. The time between the date he filed his Complaint in January of 2023 and the denial of the prison tutoring position in July of 2023, seven months later is too great to suggest causation based on temporal proximity. *See, e.g., Rankin v. Cinko*, 2023 WL 11114616, at *3 (W.D. Pa. Oct. 25, 2023). The "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link can be inferred." *Williams v. Jones*, 2022 WL 2310162, at *5 (M.D. Pa. June 27, 2022) (period of seven months between protected act and alleged retaliatory action insufficient to establish causation to support retaliation claim). *See also DeFranco v. Wolfe*, 387 Fed. Appx 147, 154-58 (3d Cir. 2010) (concluding that two months temporal proximity between the inmate-plaintiff's protected activity and the alleged retaliatory cell transfer was insufficient); *Killen v. N.W. Human Servs., Inc.*, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation).

Where, as here, the temporal proximity is not unusually suggestion, the Court must ask whether the 'proffered evidence, looked at as a whole, may suffice to raise the inference." *Leboon v. Lancaster Jewish Cmty. Ctr Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). Brunner alleges that another prison teacher, Mr. Smith, and his inmate tutor, Mickel, knew about his lawsuit before it was served. *See* ECF No. 47. Based on this allegation, Brunner speculates that Rosinski must have told them about the lawsuit, and based upon this speculation, he proposes that the Court infer a retaliator motive. The Court declines to do so. Brunner's allegations are speculative and do not permit a plausible inference that Roscinski's treatment of Brunner was linked to his protected activity. *See, e.g., Angle v. Little*, 2023 WL 5811861, at *5 (W.D. Pa. Aug. 15, 2023), *report and recommendation adopted sub nom. Angle v. Sec'y Little*, 2023 WL 5739646 (W.D. Pa. Sept. 6, 2023) (conclusory allegations do not support inference of retaliatory motive). Accordingly, Brunner's retaliation claim against Roscinski will be dismissed.

V.    Conclusion

For the reasons stated herein, the Defendants' motion to dismiss will be granted as to all claims and all Defendants except his claim for injunctive relief.[7] A separate order will follow.

VI.   Leave to Amend

The Court of Appeals for the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

---

[7] It is unclear against which Defendant Brunner seeks injunctive relief.

amendment, [or] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). And though "the grant or denial of an opportunity to amend is within the discretion of the District Court," it may not "outright refus[e] to grant the leave without any justifying reason appearing for the denial." *Id*. These instructions are equally applicable to pro se litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

Here, Brunner has already availed himself of the opportunity to amend and supplement his pleading. Despite doing so, he has been unable to allege facts to support a plausible claim against any Defendant, except possibly Sissem. However, amendment to cure the deficiencies in Brunner's claim for compensatory or punitive damages against any Defendant, including Sissem, would be futile based on Brunner's failure to exhaust his administrative remedies as to that claim. This precludes recovery on any claim except for his specific request for injunctive relief, which will proceed. Therefore, all claims except Brunner's claim for injunctive relief will be dismissed with prejudice.

DATED this 26th day of July, 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE