IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

TIMOTHY BRUNNER,

  Plaintiff

  vs.

MICHELLE ROSCINSKI,

  Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

1:23-CV-00017-RAL

RICHARD A. LANZILLO
Chief United States Magistrate Judge

MEMORANDUM OPINION ON
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

IN RE: ECF NO. 89

## I. Introduction

Plaintiff Timothy Brunner, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), commenced this action by filing a motion to proceed in forma pauperis and a pro se civil rights complaint alleging claims relating to the loss of his prison job. *See* ECF Nos. 1, 5, and 7. Brunner subsequently filed an Amended Complaint and named as defendants six officials employed at the State Correctional Institution at Albion ("SCI-Albion"): Howard Sissem, Security Captain; Lonnie Oliver, Superintendent; Earl Jones, Deputy Superintendent; Kurt Suesser, Corrections Classification and Program Manager; Heather Taylor, Business Manager; and Michelle Roscinski, Corrections Employment and Vocational Coordinator. ECF No. 17, p. 2. The Court also permitted Brunner to supplement his Amended Complaint to allege that Defendant Roscinski denied him a job as a tutor. *See* ECF No. 47.

Earlier in this litigation, the Court granted in part Defendants' motion to dismiss Brunner's Amended Complaint. *See* ECF No. 52. The Court dismissed with prejudice Brunner's claims for compensatory and punitive damages and allowed his claim for injunctive relief to proceed. *Id.*; *see generally* ECF No. 51.[1] Thereafter, the Court granted reconsideration to allow Brunner's retaliation claim for money damages against Defendant Roscinski to proceed. *See* ECF Nos. 57 and 67. Brunner later conceded that his claims for equitable relief were moot and the Court dismissed them as such, leaving Brunner's claim for monetary damages against Defendant Roscinski based on the denial of the tutoring position as the only remaining claim in this action. *See* ECF No. 86.

Defendant Roscinski answered the Amended Complaint (ECF No. 59) and now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 89.[2] She contends Brunner fails to show the denial of the tutor job was an adverse action, and further argues he fails to establish a causal connection between the denial of the job and his suit against her. *See* ECF No. 90. Brunner filed a Brief in Opposition to Defendant's motion accompanied by a Responsive Concise Statement

---

[1] The Court observed that, liberally construed, the Amended Complaint appeared to assert claims for violations of Brunner's Fourteenth Amendment right to due process and his First Amendment right to be free from retaliation, as well as a general claim of harassment. *See* ECF No. 51, pp. 4–5. The Court found that Brunner failed to exhaust his administrative remedies as to his claims for monetary damages and failed to allege the personal involvement of certain Defendants in the violations alleged. *Id.*, pp. 8–15. The Court further found Brunner failed to allege facts to support that Defendant Roscinski acted with a retaliatory motive. *Id.*, pp. 15–19.

[2] The motion is accompanied by a Concise Statement of Material Facts, supporting Brief, and Appendix of Exhibits. ECF Nos. 90, 91, and 92.

of Material Facts and supporting exhibits. ECF Nos. 96 and 97.[3] The matter is now ripe for disposition. For the reasons discussed herein, Defendant's motion for summary judgment will be granted.[4]

## II.    Factual Background[5]

Brunner is an inmate currently incarcerated at SCI-Albion. ECF No. 17, p. 3. He filed his Amended Complaint naming Roscinski as a defendant on April 12, 2023. ECF No. 17. On July 7, 2023, defense counsel moved for an extension of time to answer because Defendants Roscinski and Taylor had not yet been served. ECF No.

---

[3] Local Rule 56 requires non-moving parties to a motion for summary judgment to file a responsive concise statement in which they must: respond to each numbered paragraph in the movant's concise statement; admit or deny the facts contained in the movant's concise statement; set forth the basis for denial of any asserted fact with appropriate citation to the record; and set forth, in separately numbered paragraphs, any additional material facts upon which the party relies in opposition to the motion. *See* LCvR 56(C)(1). Courts in the Western District of Pennsylvania require strict compliance with the provisions of Local Rule 56. *See, e.g., Coleman v. Tice*, 2018 WL 5724125, at *2 n.3 (W.D. Pa. Oct. 10, 2018), *report and recommendation adopted*, 2018 WL 5722316 (W.D. Pa. Nov. 1, 2018); *First Guard Ins. Co. v. Bloom Services, Inc.*, 2018 WL 949224, at *2–3 (W.D. Pa. Feb. 16, 2018); *Hughes v. Allegheny Cnty. Airport Auth.*, 2017 WL 2880875, at *2 (W.D. Pa. July 6, 2017), *aff'd*, 728 Fed. Appx. 140 (3d Cir. 2018). This strict compliance applies equally to pro se plaintiffs and those represented by counsel. *See, e.g., Peay v. Sager*, 2022 WL 565391, at *1–2 (W.D. Pa. Feb. 1, 2022), *report and recommendation adopted*, 2022 WL 562936 (W.D. Pa. Feb. 24, 2022).

"A non-moving party faces severe consequences for not properly responding to a moving party's concise statement." *Hughes*, 2017 WL 2880875, at *1. All facts "set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56(E). Accordingly, the Court will deem admitted any properly supported statement of material fact in Defendant's concise statement to which Brunner has made a contrary assertion without record support. However, the Court will consider any contrary facts apparent from admissible evidence in the record to the extent such evidence may support Brunner's claims or contradict Defendant's assertions of fact. *See Peay*, 2022 WL 565391, at *2. Finally, because Defendant did not file a reply to Brunner's assertions of fact, the Court will also deem admitted any properly supported statement of material fact in Brunner's responsive concise statement. *See* LCvR 56(E).

[4] All parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings under 28 U.S.C. §636(c).

[5] The following facts derive primarily from the parties' Local Rule 56(B) and (C) Concise Statement of Material Facts and Responsive Concise Statement and accompanying exhibits.

27.    On July 14, 2023, counsel entered a notice of appearance for Defendants Roscinski and Taylor. ECF No. 29.

When the events underlying this action took place, Defendant Roscinski was the Corrections Employment Vocational Coordinator ("CEVC") at SCI-Albion. ECF No. 91-4, ¶ 1. During Roscinski's employment as CEVC, "the teachers interviewed and hired their own tutors," and she "did not have a role in the selection process." *Id.*, ¶ 2. Rather, her "involvement was limited to supplying teachers with a waiting list from the inmate employment office, if they requested one." *Id.*, ¶ 3. Then, once the teacher selected a final candidate, Roscinski processed the employment paperwork. *Id.*, ¶ 4; *see also* ECF No. 96-1, p. 18 (per DC-ADM 816, § 2.B.2, the CEVC "coordinates and makes work assignments or changes as recommended by the . . . Unit Management Team, and as approved by the Facility Manger").

In July 2023, SCI-Albion Adult Basic Education Teacher Timothy Smith interviewed several inmates for a tutor position in his classroom. ECF No. 91-5, ¶¶ 1, 3. Brunner found out about the position from his technology class instructor, Mr. Teetzel, and interviewed with Smith on July 21, 2023. ECF No. 96-1, pp. 6–7; *see* ECF No. 91-5, ¶ 5. On July 28, 2023, Brunner "began to inquire as to whether or not [he] would be hired." ECF No. 96-1, p. 7. According to Brunner, Smith's inmate tutor Mickel told him that Smith wanted to hire Brunner but that Roscinski would not allow it "because she had just been serve[d] paperwork for a lawsuit naming her as a defendant." *Id.*; *see id.*, p. 16. On July 29, 2023, Brunner submitted an Inmate's Request to Staff Member form to Smith asking whether this information was true. *Id.*, p. 10.

4

On August 4, 2023, Corrections Counselor Ryan Schulz sent an email to Teetzel stating:

> [Brunner] stopped in today to talk to me about a tutor job. He said he believed that he was approved, so I just wanted to check in and see if there is something that I should be doing to get the process started. I haven't heard from Roscinski yet . . . and sometimes will get an email from her asking me to start the process.

ECF No. 91-1, p. 2. Teetzel replied, copying Smith, and explained it was Smith who interviewed Brunner for the tutor position. *Id.* Smith then replied:

> Hey Ryan, I have not hired a tutor yet. Mr. Brunner was one of the two guys I was considering to hire after having three interviews. However, one of the other applicants was a former student of mine and I have a good working relationship with him so I was pursuing him as my first choice. I never told Mr. Brunner that he got the position and I haven't spoken to him since the day of our interviews because I am still awaiting if my first choice was approved. I will write Mr. Brunner today and state this information.

*Id.*, p. 1; *see also* ECF No. 91-5 (Smith Declaration). Mr. Smith then responded to Brunner's Inmate Request:

> Thank you for your time in wanting to become a tutor in my classroom. I enjoyed your interview process, especially because I have not met you previously. You were one of my two options for the position after having my interviews. However, I have chosen to go with my former student as I had a great working relationship with him previously. I did not inform any of the participants from my interviews at this time, but after receiving your request I thought you should know. You will definitely be considered for my future openings as your answers were well thought.

ECF No. 96-1, p. 11.[6]

---

[6] Brunner stated in his proposed supplemental complaint, which the Court did not grant leave to file, that he received Smith's response on August 7, 2023. ECF No. 45-1, p. 10.

On or about August 13, 2023, Brunner filed Grievance # 1046274 claiming Smith "initially selected" him for the tutor position, but that Defendant Roscinski denied him the job in retaliation for being served with this lawsuit. ECF No. 96-1, pp. 15–16. The grievance officer determined there was "no malice or retaliation" toward Brunner and denied his grievance, reasoning:

> I interviewed Mr. Smith and he stated that Inmate Brunner was a good candidate but he chose a former student who he had in a previous class. Mr. Smith knows the demeanor of the new hire and believes he fits in well into his classroom. Mr. Smith also informed this counsel that he would consider Inmate Brunner . . . for future tutor positions if one is made available. Also, Mr. Smith had no knowledge of an impending lawsuit against Ms. Roscinski and if he would have known about the lawsuit this information would not have swayed him one way or the other in his decision. Ultimately this comes down to Mr. Smith's choice of who will work best in his classroom and at this time that choice was a former student. Inmate Brunner . . . is still on the list for future tutor positions.

ECF No. 91-2, p. 1. Brunner unsuccessfully appealed Grievance # 1046274 to final review. *Id.*, pp. 2–3.

On or about August 17, 2023, Brunner obtained a position as a chaplain's assistant. *See* ECF No. 45-1, p. 11; ECF No. 96-1, p. 23.

## III.   Standard of Review

Federal Rule of Civil Procedure 56(a) requires the district court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under this standard "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

6

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Loc. 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. *Id.*; *see Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (nonmovant cannot "rely merely upon bare assertions, conclusory allegations or suspicions").  Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories, or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements.  The Rule mandates summary judgment if the plaintiff then fails to make a sufficient

showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Finally, where, like here, a party is proceeding pro se, the court has an obligation to construe the pro se party's filings "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, despite this liberal interpretation, the same standards for summary judgment apply to *pro se* litigants," *Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009), and "a pro se plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment," *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted); *see Winfield v. Mazurkiewicz*, 2012 WL 4343176, at *1–2 (W.D. Pa. Sept. 21, 2012). In other words, the party opposing summary judgment, whether or not pro se, "must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." *Watson*, 629 F. Supp. 2d at 485.

## IV.    Discussion and Analysis

Brunner contends Defendant Roscinski retaliated against him for naming her as a defendant in this lawsuit by denying him the tutoring job.

Prisoners have no protected liberty or property interest in prison employment. *Mack v. Warden Loretto FCI*, 839 F.3d 286, 300 n.76 (3d Cir. 2016). "Nonetheless, a prisoner cannot be fired from or passed over for a job in retaliation for exercising a constitutional right." *Howard v. Coupe*, 2023 WL 2207592, at *2 (3d Cir. Feb. 24,

2023); *see Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000) ("[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." (alteration in original) (citation omitted)); *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) ("an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech").  Accordingly, to prevail on his First Amendment retaliation claim, Brunner must show: (1) he engaged in constitutionally-protected activity; (2) the prison official took an adverse action against him; and (3) "'a causal link' exists 'between the exercise of his constitutional rights and the adverse action taken against him.'" *Graziano v. Pa. Dep't of Corr.*, 2023 WL 6389756, at *22 (W.D. Pa. Sept. 30, 2023) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).[7]

An "adverse action" is one that would "deter a person of ordinary firmness from exercising his First Amendment rights." *Allah*, 229 F.3d at 225 (internal quotations and citation omitted).  This is an objective inquiry.  *See id.*  The retaliatory conduct "need not be great in order to be actionable but it must be more than *de minimis*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations and citation omitted); *see Laurensau v. Pluck*, 2013 WL 4779010, at *10 (W.D. Pa. Sept. 5, 2013) ("Actions deemed sufficiently adverse to sustain such a claim in the prison context

---

[7] In analyzing Brunner's claim herein, the Court is mindful that "[b]ecause retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every [adverse] action taken against a prisoner." *Miskovitch v. Hostoffer*, 721 F. Supp. 2d 389, 396 (W.D. Pa. 2010).

are those such as being placed in disciplinary confinement or administrative segregation; denied parole; transferred to an institution whose distance made regular family visits impossible; suffering some sort of financial penalty; or being severely limited access to the commissary, library, recreation, and rehabilitative programs.").

A "causal link" exists where the prisoner's "protected activity was a substantial motivating factor in the [prison official's] decision to take the adverse action." *Miskovitch*, 721 F. Supp. 2d at 395. To meet his burden as to this element, the prisoner "must come forward with more than 'general attacks' upon the defendant's motivations." *Id.* at 396 (citation omitted); *see also Hannon v. Speck*, 1988 WL 131367, at *4 (E.D. Pa. Dec. 6, 1988) ("an inmate faces a 'substantial burden in attempting to prove that the actual motivating factor . . . was as he alleged'" (citation omitted)), *aff'd*, 888 F.2d 1380 (3d Cir. 1989). Thus, to prove retaliatory motive, the prisoner must establish "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). "These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (citation omitted); *see Watson*, 834 F.3d at 424 ("causation . . . can be established from the evidence gleaned from the record as a whole").

Brunner maintains Defendant Roscinski denied him the tutor position in retaliation for filing this lawsuit. As Defendant concedes, the filing of a prison grievance or a lawsuit is protected activity. *See Graziano v. Wetzel*, 2024 WL 580551,

10

at *7 (M.D. Pa. Feb. 13, 2024); ECF No. 90, p. 5. Assuming arguendo that Brunner suffered an adverse action (denial of the tutor job),[8] his claim nevertheless fails because the record does not support that Roscinski denied Brunner the tutor job based on her own retaliatory motive.

First, the chronology here is not unusually suggestive of retaliatory motive. While the record does not indicate when Defendant Roscinski was served or otherwise notified of this lawsuit, the Court presumes such service was completed by July 14, 2023, when counsel entered a notice of appearance for Defendants Roscinski and Taylor. *See* ECF No. 29. Brunner states he interviewed for the tutor position on July 21, 2023, and claims Mickel told him on July 28, 2023 that Roscinski denied him the position. ECF No. 96-1, p. 7.[9] Assuming then that Roscinski learned of this suit at least fourteen days before Mickel so informed Brunner, such temporal proximity alone is insufficient to show causation. *Blakney v. City of Philadelphia*, 559 Fed. Appx. 183, 186 (3d Cir. 2014) ("temporal proximity greater than ten days requires supplementary evidence of retaliatory motive"); *e.g.*, *Fischer v. Transue*, 2008 WL

---

[8] The record here at the very least raises a question of fact about whether such denial would deter a person of ordinary firmness from exercising his constitutional rights. *See Washington v. Barnhart*, 2021 WL 2342924, at *18 n.36 (W.D. Pa. May 14, 2021) ("the retaliation cause of action is designed to protect rights of access and not to police all interactions between prisoners and corrections officers"). Brunner was not in fact deterred from continuing to actively prosecute this suit, nor was he dissuaded from filing grievances. Indeed, in direct response to this alleged instance of retaliation, Brunner exercised his protected right to file a grievance against Roscinski. The Court is mindful, however, that the proper inquiry on summary judgment is whether Brunner has presented evidence that the job denial was an adverse action; not whether he was actually deterred from exercising his constitutional rights. *See Fiore v. Holt*, 435 Fed. Appx 63, 68 (3d Cir. 2011) (the "adverse action . . . standard is an objective inquiry").

[9] Confusingly, Brunner states in his opposing memorandum that he "was denied the tutor position by the Defendant some time prior to 7-21-23." ECF No. 96, p. 8. The Court notes that the evidence of record indicates no prison official informed Brunner as to whether he had been selected for the tutor position until he received Smith's response on or around August 7, 2023.

3981521, at *10 (M.D. Pa. Aug. 22, 2008) (temporal proximity of twenty-two days is "too lengthy to give rise to an inference of causation"); *Killen v. Nw. Hum. Servs., Inc.*, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (timing not "unusually suggestive" where several weeks elapsed between plaintiff's complaint and adverse action); *see also Baker v. Williamson*, 2010 WL 1816656, at *6 (M.D. Pa. May 5, 2010) ("The mere fact that an adverse action occurs after a complaint . . . is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events."), *aff'd*, 453 Fed. Appx. 230 (3d Cir. 2011). Without more, the chronology of events in this case cannot create an inference of causation and defeat summary judgment. *See Farrell*, 206 F.3d at 280 ("where the temporal proximity is not so close as to be 'unduly suggestive,'" the appropriate test is "timing plus other evidence").

Nor has Brunner come forward with other evidence to support a causal link. Brunner claims Roscinski knew he had applied for the tutor job and that Smith's stated reasons for selecting another applicant are fabrications used to disguise the real reason Brunner did not get the job: because Roscinski was upset that Plaintiff sued her. No evidence of record supports this contention,[10] and Brunner's conclusory allegation that Roscinski denied him the tutor job in retaliation for this lawsuit is

---

[10] Smith avers in his declaration that he "did not consult" with Roscinski about Brunner "at any time during the interviewing and hiring process," nor did Roscinski ever reached out to him to discuss Brunner. ECF No. 91-5, ¶¶ 9–10. He also "was not aware that Mr. Brunner had a lawsuit pending against Ms. Roscinski," and Roscinski "never informed" Smith of Brunner's suit against her. *Id.*, ¶¶ 11–12. Smith further avers "Roscinski had no influence over my decision not to hire Mr. Brunner for the tutor position." *Id.*, ¶ 13. Roscinski avers in her declaration that she "did not become aware that Mr. Smith was hiring a tutor until he had completed interviews and selected his candidate, at which time he advised me of his final choice and I processed the paperwork for Mr. Smith's selected candidate." ECF No. 91-4, ¶ 7. She further states she "never attempted to influence Mr. Smith not to hire inmate Brunner," and "never told Mr. Smith that inmate Brunner had filed a lawsuit against [her]." *Id.*, ¶¶ 8–9.

speculative and insufficient to create a triable issue of material fact.[11]  And, even if

Roscinski knew Smith interviewed Brunner, nothing in the record supports an

_____

[11] In support of his opposing brief, Brunner attaches his declaration signed August 8, 2023, ECF No. 96-1, pp. 6–8, and a declaration from inmate Holloway signed August 19, 2023, *id.*, p. 13.

Brunner avers in his declaration that "[a]n unnamed party who wishes to remain anonymous"—who Brunner later identified in Grievance # 1046274 as inmate Mickel—informed him of the following: "Mr. Smith contacted CEVC Ms. Roscinski with the firm intention of hiring me as his new Tutor. CEVC Ms. Roscinski responded that she would not allow me to advance in any way because she had just been sever [sic] paperwork for a lawsuit naming her as a defendant."  ECF No. 96-1, p. 7. Brunner's purported recital of what a third party told him is classic hearsay.  And, while Brunner urges Mickel "is a discoverable witness and subpoenable for testimony at trial," ECF No. 96, p. 7, Mickel's statements as to what Smith and Roscinski supposedly discussed are also hearsay.

Holloway's declaration fairs no better.  According to Holloway, Smith told him on July 26, 2023, that he had submitted two inmate names to be hired, Brunner and McLaurin, and he "had chosen to hire both inmates."  ECF No. 96-1, p. 13.  Holloway states he then told Smith "that Brunner was told he had been denied the position, but Mr. Smith said he was unaware that anyone had been denied at all." *Id.*  The following day, Smith "told [Holloway] and his inmate tutor Mickel that Brunner had been denied the position by inmate employment because of a lawsuit he filed.  He said he tried to hire both inmates but Brunner was denied for that reason." *Id.*

To the extent that Brunner offers these declarations for the truth of the matters asserted as to what Smith and Roscinski purportedly said, such statements are inadmissible hearsay.  Further, Federal Rule 56 requires that declarations submitted to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  As such, Brunner's and Holloway's declarations cannot create a genuine dispute of material fact as to Smith's and Roscinski's own declarations.  *See Davis v. Harlow*, 2014 WL 4250382, at *7 (W.D. Pa. Aug. 26, 2014) ("Speculation is not a substitute for personal knowledge, and conclusory assertions on summary judgment, even sworn to, are insufficient to create a genuine issue of material fact."), *aff'd*, 632 Fed. Appx. 687 (3d Cir. 2015); *Iseley v. Beard*, 2009 WL 1675731, at *11 (M.D. Pa. June 15, 2009) ("Conclusory, speculative allegations in plaintiff's affidavits and moving papers, without more, in the face of documentary evidence, [are] insufficient to create a genuine issue of fact and defeat summary judgment."); *Njos v. United States*, 2017 WL 6949812, at *4 (M.D. Pa. Oct. 17, 2017) ("a plaintiff cannot avoid summary judgment by simply relying upon a self-authored declaration that relies not on evidence, but on the plaintiff's own interpretation of events"), *report and recommendation adopted*, 2018 WL 453441 (M.D. Pa. Jan. 17, 2018).

As discussed throughout this opinion, the evidence of record does not support Brunner's contentions that Smith intended to hire Brunner but Roscinski would not allow it.  Additionally, there is no evidence to suggest that Roscinski played any role in who Smith selected for the tutor position. Brunner simply attempts to defeat Defendant's motion with his own conclusory, self-serving declarations.  This he may not do.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); *see also Miskovitch*, 721 F. Supp. 2d at 396 ("a plaintiff must come forward with more than 'general attacks' upon the defendant's motivations and must produce 'affirmative evidence' of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive" (citation omitted)).

inference that her knowledge of this lawsuit caused or motivated her to deny Brunner the job.

Moreover, the record does not support that Roscinski was responsible for the adverse action in the first place.[12] Rather, Smith avers he had "complete control over the hiring process," ECF No. 91-5, ¶ 4, that Roscinski played no role in who Smith decided to interview and hire, *id.*, ¶¶ 9–10, 13, and that he never submitted Brunner's name as his final choice for the tutor position, *id.*, ¶ 8. Brunner also has not presented any evidence that his suit against Roscinski was a substantial or motivating factor in Smith's decision to hire another candidate. Rather, the evidence reveals that Smith selected a former student as his first choice for the tutor job because he "already had a good working relationship" with that candidate, ECF No. 91-5, ¶ 7, and Smith then advised Roscinski of his decision so that she could process the employment paperwork. *See* ECF No. 91-1, p. 1; ECF No. 91-4, ¶ 7. Additionally, Brunner obtained a chaplain assistant position in August 2023, just a few weeks after he interviewed for the tutor position—a job that Roscinski presumably processed the paperwork for.[13] For all of these reasons, no reasonable juror could find that Smith's hiring decision had any connection to Brunner's suit against Roscinski, or that Roscinski denied Brunner the tutor position in retaliation for this lawsuit.

---

[12] For this reason also, summary judgment for Defendant is warranted. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("[a] defendant in a civil rights action must have personal involvement in the alleged wrongs").

[13] Indeed, Brunner himself asserts Roscinski was "the sole person working in the Inmate Employment Office at that time, and she processed the administrative paperwork through that department for every inmate hired in any position." ECF No. 97, ¶ 3.

Finally, even assuming a causal connection between Brunner's protected activity and the adverse action, Defendant Roscinski may still defeat his claim by showing that she "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. Here, the record evidence reflects the following: Smith interviewed Brunner and several other inmates for the tutor position, and Brunner "was one of two inmates that [Smith] was considering." ECF No. 91-5, ¶ 6. Smith decided "to hire the other candidate because he was a former student of [Smith's] and [they] already had a good working relationship," *id.*, ¶ 7, and Smith provided that inmate's name to Roscinski to process the employment paperwork. Smith also advised Brunner of his decision and stated he would consider Brunner for future openings. Additionally, the grievance officer investigated Brunner's retaliation claim and reiterated that Roscinski played no role in Smith's hiring decision. The record thus shows that Smith determined who to hire and that Smith did not select or submit Brunner's name to Roscinski as his first choice. The fact that Brunner filed a lawsuit against Roscinski does not negate the fact that it was Smith's decision to select the candidate he believed was best suited for the position. Thus, Defendant has come forward with sufficient evidence to show that she would have taken the same action—processing the hiring of Smith's first choice candidate—regardless of Brunner's suit against her. In other words, Brunner would not have been offered the position regardless of Roscinski's notice of this lawsuit. *See, e.g.*, *Bullock v. Buck*, 611 Fed. Appx. 744, 747 (3d Cir. 2015) (finding district court correctly rejected retaliatory reassignment claim,

where record showed other prisoners assigned to laundry job either had prior experience or had interviewed for the position); *Manning v. Flock*, 2012 WL 1078227, at *12 (M.D. Pa. Mar. 30, 2012) (defendants "offered uncontroverted evidence" that inmate's job reassignment was based on needs of institution, "not in retaliation for the filing of any grievances").

In sum, Brunner has failed to produce evidence of a causal link between the denial of the tutor job and Roscinski's notice of this lawsuit. Further, the Court has conducted a thorough review of the record and has found no evidence to support an inference of causation in the instant case. Because the record is insufficient to support the causation element of Brunner's retaliation claim against Roscinski, and further considering that Defendant has sufficiently demonstrated the "same decision" defense, Defendant is entitled to judgment as a matter of law.

## V.    Conclusion

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 89) is GRANTED.

A separate order follows.

DATED this 30th day of March, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE